UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| HAIR U WEAR, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) Case No.<br>) |
| v. | ) JURY TRIAL DEMANDED<br>) |
| MOSAIC INTERNATIONAL, LLC, and | )<br>) |
| THE TONYTAIL COMPANY d/b/a MIA HAIR ACCESSORIES AND STYLING TOOLS | )<br>)<br>) |
| Defendants. | )<br>)<br>)<br>) |

## COMPLAINT

Plaintiff HairUWear, Inc., by and through their attorneys of record, hereby alleges and states as follows:

## THE PARTIES

1. Plaintiff HairUWear, Inc. is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business in Kansas City, Missouri.

2. Upon information and belief, Defendant Mosaic International, LLC is a limited liability company organized and existing under the laws of the state of California with a principal place of business at 1427 Vine Lane, Alamo, California 94507.

3. Upon information and belief, Defendant The Tonytail Company d/b/a Mia Hair Accessories and Styling Tools, is a corporation organized and existing under the

1

laws of the state of California with a principal place of business at 12919 Alcosta Boulevard, Suite 4, San Ramon, California 94583.

## JURISDICTION & VENUE

4. This action arises under the Trademark and Unfair Competition Laws of the United States, Title 15, United States Code (the "Lanham Act") and includes an action for declaratory judgment of non-infringement of trademark under 28 U.S.C. §§ 2201, 2202, and 1338(a).

5. Subject matter jurisdiction for this action is based upon federal question jurisdiction under 28 U.S.C. §§ 1331, 1338, and 2201, and under 15 U.S.C. § 1051 et seq. in that this case arises under the trademark and unfair competition laws of the United States. Subject matter jurisdiction for any claim based upon state law is proper under 28 U.S.C. § 1367(a).

6. Venue is proper in this district under 28 U.S.C. § 1391(a)-(d) in that Defendants are subject to personal jurisdiction in this District and/or a substantial part of the acts or omissions giving rise to this claim occurred in this District and/or the harm caused by Defendants' actions or omissions were suffered in this District.

7. Plaintiff's accused marks are and have been authored, created, published and/or printed in this District. The accused marks have been sold and marketed for sale in this District and the profits from the sale of those accused marks have been earned in this District.

8. Defendants transact business by licensing and/or distributing hair care accessories and styling tool products for sale at multiple retail and wholesale locations in this District.

9.  Defendant transacts business by using the Internet to target, advertise, and market hair care accessories and styling tool products to consumers in this District either directly or through licensees/distributors.

10. Defendant transacts business by selling hair care accessories and styling tool products directly to consumers in this District through orders placed over the telephone via its toll free number and through orders placed on its own website or through the websites of third party licensees/distributors, such as Amazon.com, etc.

11. By email communications dated July 22, 2013 and July 25, 2013, which was sent to Plaintiff in this District and is attached hereto as **Exhibit A**, Defendants alleged that Plaintiff has violated their intellectual property rights through infringement of Defendants' alleged trademarks and services marks. In the email communications, Defendants allege Plaintiff's use of the purported trademark "Clip-N-Color" is likely to cause confusion, mistake or deception within the consuming public; expressly charge Plaintiff with trademark infringement; demand that Plaintiff immediately cease and desist from using the purported trademark "Clip-N-Color" in any product it sells; and threatens immediate legal action and the pursuit of, among other things, injunctive relief and substantial damages against Plaintiff for the alleged violation of Defendants' intellectual property rights.

12. Plaintiff has at all relevant times sold, marketed, and packaged some of its products using the words or phrases "clip in" or "color" either individually or collectively on products (hereinafter, the "Accused Marks") for hairpiece strips that contrast with the hair color of the wearer and subsequently clip into the wearer's existing hair.

3

13. Plaintiff's use of the words or phrases "clip in" or "color" either individually or collectively on products is designed in good faith to solely provide a basic explanation, identifier, or description of the product or its functionality. The words or phrases are being used to describe aspects of Plaintiff's own goods; they are not being used as a trademark for those goods.

14. The threats contained in Defendants email communications in Exhibit A have created a real and reasonable apprehension on the part of Plaintiff that Defendants intend to file suit against Plaintiff for trademark infringement, dilution, and/or unfair competition. The allegations contained therein show a substantial controversy between the parties having adverse legal interests of sufficient immediacy to warrant the issuance of a declaratory judgment.

15. An actual case or controversy exists between Plaintiff and Defendants regarding the scope, meaning, validity, enforceability, and infringement of Defendants' purported trademark "Clip-N-Color."

16. Plaintiff has, or will in the near term, inform Defendants that it has no intention of ceasing to distribute, sell, and market products under the Accused Marks, utilizing such words or phrases as "clip in" or "color," either individually or collectively, on products to provide a basic identifier or description of the function of its own products now or in the future based upon Defendants' unsupported claims of trademark infringement.

17. The purported trademark "Clip-N-Color" is legally unsupportable under trademark and unfair competition laws because it is a generic term for the products Defendants sell under the purported trademark. The phrase "clip-in color" is a phrase

commonly used in the hair care and hair product industries when referencing clip-in or clip-on hair extensions that contrast with the hair color of the wearer. The clip-in or clip-on technique for hair extensions (and products associated therewith) are the most popular choice for wearers of these hair accessories because they are the least permanent, can be effectively added or removed without the need to use sew-in techniques or hair glue, and can be easily applied in hair by the wearers themselves through a clip without having to visit a hair salon or hair stylist. When this technique was introduced many years ago, the phrase "clip-in color" was never associated with any particular company or company's products and was used throughout the industry as a generic term or label to primarily refer to those products that embody the "clip-in color" technique or functionality.

18. When the application for the purported trademark "Clip-N-Color," Trademark Registration No. 3443892, was submitted to the U.S. Patent and Trademark Office ("USPTO"), Defendants included product packaging specimens, attached hereto as **Exhibit B**, that made clear the product is a 14 inch clip-in hair strip or hair extension that differs in color from the natural hair color of its wearer.

19. An internet search of the generic phrases "clip-in," "clip-in hair extensions," and "clip-in color hair extensions" reveals millions upon millions of websites covering the use, manufacture, marketing, product placement, sale, or information regarding hair strips or hair extensions that contrast with the hair color of the wearer and subsequently clip into the wearer's existing hair. Most, if not all, of these resulting websites emanate from sources that have absolutely no affiliation, sponsorship, link or endorsement from Defendants.

20.     There is no likelihood of consumer confusion between Plaintiff's use of the words or phrases "clip in" or "color" either individually or collectively on products and Defendants' purported trademark "Clip-N-Color" as the strength of the purported mark is weak, Plaintiff is not using the words or phrases as a trademark but merely a generic product identifier, there are distinct differences between the mark and the Accused Marks, there are no instances of any intent on the part of Plaintiff to "pass off" its goods as those of Defendants, and there are certainly no incidents of actual consumer confusion.

21.     Furthermore, Defendants' original trademark application and its subsequent Section 8 Declaration of Use for the "Clip-N-Color" mark stated under penalty of perjury to the USPTO that Defendants have used the purported "Clip-N-Color" designation in connection with close to twenty (20) different types of hair products. However, since the initial filing of the application and the subsequent filing of the Section 8 Declaration of Use, Defendants have failed to use the mark with all of the goods and, through those filings and representations, Defendants have made materially false and/or fraudulent statements regarding Defendants' use of the "Clip-N-Color" designation to the USPTO.

22.     There is a justiciable and actual controversy before the Court with regard to whether Plaintiff has infringed and violated any rights of the Defendant and specific relief may be granted pursuant to 28 U.S.C. § 2201 for a declaration of rights that will resolve the controversy giving rise to this proceeding.

WHEREFORE, Plaintiff prays that this Court enter its declaratory judgment respecting the rights, remedies, and legal obligations of the parties to this lawsuit and specifically to declare:

(a) That Plaintiff has not infringed or diluted, induced others to infringe or dilute or contributed to the infringement or dilution of the Defendants' purported trademark for "Clip-N-Color," Trademark Registration No. 3443892, or any other of the Defendants' purported marks claiming exclusive rights in the phrase "Clip-N-Color";

(b) That Defendants, their officers, agents, counsel, servants and employees and all persons in active concert or participation with any of them be enjoined from charging infringement or dilution of Defendants' purported trademark for "Clip-N-Color," Trademark Registration No. 3443892, or any other of the Defendants' purported registered marks claiming exclusive rights in the phrase "Clip-N-Color";

(c) That the United States Patent and Trademark Office cancel, in whole or in part, Defendants' alleged trademark for "Clip-N-Color," Trademark Registration No. 3443892, or any other of the Defendants' purported registered marks claiming exclusive rights in the phrase "Clip-N-Color," as well as require that any trademark applications currently pending on behalf of Defendants expressly disclaim any exclusivity to the phrase "Clip-N-Color";

(d) That the phrase "Clip-N-Color" be found generic and invalid for use as a trademark;

(e) That this case is an exceptional case and Plaintiff is entitled to recovery of its full costs, expenses, and attorneys' fees under 35 U.S.C. § 285; and

(f) That Plaintiff be granted such other and further relief as this Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby requests a jury trial on all issues so triable.

DATED: July 31, 2013

Respectfully submitted,

LATHROP & GAGE L.C.

/s/ R. Cameron Garrison

R. Cameron Garrison     MO # 54064
cgarrison@lathropgage.com
Luke M. Meriwether     MO # 59915
lmeriwether@lathropgage.com
2345 Grand Blvd., Suite 2200
Kansas City, Missouri 64108-2684
Telephone: (816) 292-2000
Telecopier: (816) 292-2001

*Attorneys for Plaintiff Hair U Wear, Inc.*